FILED

JUL 1 2 2006

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: CATHERINE P. MOREHEAD AND
       RAYMOND A. MOREHEAD,

           Debtors/Appellants/Appellees,

v.                                CIVIL ACTION NO.  1:05CV141
                                         (Judge Keeley)

WALDOCK INVESTMENT COMPANY,

           Appellants/Appellees.

### MEMORANDUM AND OPINION ORDER

On August 22, 2005, the United States Bankruptcy Court for the Northern District of West Virginia entered an order awarding administrative expenses to two law firms (Nathan & Roberts and Steptoe & Johnson) totaling $15,593.53[1] for services they had performed for Waldock Investment Company. Two separate appeals stemming from that award are now before the Court, one filed by Waldock Investment Company ("Waldock"), and one filed by Catherine P. Morehead and Dr. Raymond A. Morehead (the "Moreheads"). In its appeal, Waldock has asserted that the Bankruptcy Court improperly limited the scope of its claim to one for administrative expenses

---

[1] The Bankruptcy Court awarded fees directly to Waldock's attorneys rather than to Waldock. For purposes of their appeals, the parties agree that this was an oversight, and have proceeded as if the Bankruptcy Court intended to award Waldock administrative expenses. Further, there is no dispute between the law firms and Waldock, or any other party, concerning the direct award of fees to Waldock's attorneys as opposed to Waldock.

**In re: Morehead v. Waldock Investment Co.**                                    **1:05CV141**

### MEMORANDUM OPINION AND ORDER

incurred in connection with Waldock's discovery and investigation of the Moreheads' disability insurance policy, and subsequently, its objection to the Moreheads' claim that the policy proceeds were exempt. The Moreheads have appealed the Bankruptcy Court's award of administrative expenses to Waldock, asserting that the award was barred by <u>res judicata</u> and, alternatively, that while Waldock's investigation may have benefitted the estate, the value of the work involved in Waldock's discovery and disclosure of the disability insurance policy was <u>de minimus</u>. On November 1, 2005, the Court consolidated these appeals and will address both matters in this Order.

### I. LEGAL ISSUES

Waldock asserts the following as the basis for its appeal:

> The Bankruptcy Court erred in awarding Waldock $15,593.53 in administrative expenses for work done by its attorneys, when Waldock had agreed to relinquish its administrative priority in exchange for an unsecured subordinate claim for post-petition work in the amount of $76,697.66, pursuant to 11 U.S.C. § 510.

The Moreheads assert the following as the basis for their appeal:

> The Bankruptcy Court erred in awarding attorneys fees in the amount of $9,427.58 to the law firm of Nathan & Roberts and in the amount of $5,249.00 in fees and $915.95 in expenses to the law firm of Steptoe & Johnson based on the bar of <u>res judicata</u>, and alternatively, that while Waldock's investigation may have benefitted the estate, the value of the

2

work involved in its discovery and disclosure of the disability insurance policy was <u>de minimus</u>.

On appeal the Court must determine whether, in granting Waldock's claim for administrative expenses, the Bankruptcy Court ruled on the claim procedurally before it, and if so, whether the amount of the award was proper. For the reasons that follow, the Court finds that the Bankruptcy Court did not err in ruling on Waldock's motion for administrative expenses, and further finds that the award granted was not clearly erroneous. Therefore, it **AFFIRMS** the judgment of the United States Bankruptcy Court for the Northern District of West Virginia, Clarksburg Division.

## II.   FACTUAL BACKGROUND

On May 9, 1997, Dr. Morehead received a telephone call early in the morning from Robert Waldock of Lind-Waldock, a futures brokerage through whom he traded in the commodities markets. Waldock had called to advise him that the market had moved against his open positions overnight and that Lind-Waldock was making an $800,000.00 margin call. Unable to meet the margin call, Dr. Morehead's open positions were liquidated, resulting in a $321,038.00 deficit in his Lind-Waldock trading account. On that same day, Dr. Morehead was terminated from his position as a

**In re: Morehead v. Waldock Investment Co.**                          **1:05CV141**

**MEMORANDUM OPINION AND ORDER**

practicing surgeon at the Veterans' Administration Hospital in Clarksburg, West Virginia.

Dr. Morehead subsequently underwent treatment for chemical dependency in Atlanta, Georgia. On June 4, 1997, while he was in Atlanta, his wife filed a Chapter 7 voluntary bankruptcy petition on behalf of herself and her husband, and, on October 22, 1997, a discharge was entered.

On February 18, 1998, the case was re-opened to allow the Trustee to administer additional, unscheduled assets, specifically a disability insurance policy which Dr. Morehead purchased prior to filing bankruptcy, and from which he had begun drawing benefits post-filing. As such, the Moreheads amended their schedule to include the proceeds of the policy, but listed those proceeds as exempt. After the Trustee objected to the asserted exemption, on December 8, 1998, the Bankruptcy Court found that the omission of the policy from the Moreheads' original schedule had been inadvertent and that the policy was fully exemptible. On appeal, this Court reversed with regard to the amount of the exemption and found the disability insurance policy to be an asset of the estate available for the claims of creditors subject to a reasonable exemption of policy proceeds.

**In re: Morehead v. Waldock Investment Co.**                              **1:05CV141**

### MEMORANDUM OPINION AND ORDER

The Moreheads' omission of the disability policy came to light during the course of a routine deposition of Dr. Morehead regarding a dischargeability complaint that Waldock had filed. The Bankruptcy Court ruled against Waldock on its dischargeability complaint, a ruling that this Court, and the Fourth Circuit later affirmed.

On March 3, 1998, Waldock filed a proof of claim for $983,115.74, to which the Trustee objected. Subsequently, the parties agreed that the value of the claim should be $321,038.56. That amount was incorporated into an order by the Bankruptcy Court on October 9, 1998.

### III. FACTS RELEVANT TO APPEAL

Pursuant to 11 U.S.C. §§ 503(b)(3)(D)[2] and 503(b)(4), on November 8, 2004, Waldock filed a motion with the Bankruptcy Court for an allowance of administrative expenses in the amount of

---

[2] (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

5

**In re: Morehead v. Waldock Investment Co.**                    1:05CV141

<u>MEMORANDUM OPINION AND ORDER</u>

$76,697.66[3]. Waldock claimed that it was entitled to such expenses because (1) its attorneys had performed extensive discovery and investigation which, in turn, had led to the discovery and disclosure of the Moreheads' disability policy; and (2) it had incurred costs litigating the appeal of the Bankruptcy Court's full exemption of the policy proceeds.

On December 2, 2004, the Bankruptcy Court conducted a hearing during which there was some discussion of Waldock's motion for administrative expenses. During that hearing Buswell Roberts, Waldock's representative, made reference to accepting an unsecured claim that would be treated as a late filing claim, to wit:

> Your honor, what we're asking for is actually, we had some discussions with Mr. Sheehan and we have agreed that we don't intend to interrupt or disrupt the existing distribution scheme and what we're really prepared to accept is an unsecured claim that would be treated as a late filing claim, so that we only get any of these funds in the event the matter continues, the doctor continues receiving his disability benefits and after distributions are made to the earliest filed claims together with interest on those, and I agreed to that with Mr. Sheehan on the phone yesterday or the day before in an effort to

---

[3] (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

6

In re: Morehead v. Waldock Investment Co.                    1:05CV141

**MEMORANDUM OPINION AND ORDER**

>    try to eliminate a number of concerns he had about our
>    motion.

(Supp. Item No. 1, p. 6.)[4]

Hearing transcripts reveal that the Bankruptcy Court instructed the parties to determine whether or not they believed one could amend a proof of claim after so many years had passed, and additionally, advised the parties to brief the issues for the court. The Bankruptcy Court did not directly respond to the reference of an unsecured claim, nor did Mr. Roberts inform the court that he intended to withdraw the motion for administrative expenses and file an unsecured late filing claim in the alternative.

Allegedly sometime in April, 2005, Waldock and the Trustee signed an agreed order stating that, whatever amount of money Waldock sought, it would seek it not as a timely filed claim, or a late filed claim, but as a subordinated claim pursuant to 11 U.S.C. § 510[5].

---

[4] All references to Item No. ___, refer to the 1:05CV141 appellate record. Reference to any other record will be indicated in the citation.

[5]
(a) A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

**In re: Morehead v. Waldock Investment Co.**  1:05CV141

## MEMORANDUM OPINION AND ORDER

On May 18, 2005, the Moreheads filed an objection to Waldock's motion for administrative expenses. The Moreheads argued that the only compensation that Waldock was entitled to receive was for advising the Trustee of the existence of the disability policy. While the Moreheads acknowledged that Waldock's investigation may have benefitted the estate, they argued that the value of the work involved in its discovery and disclosure of the disability insurance policy was <u>de minimus</u>.

On June 2, 2005, Waldock filed a reply to the Moreheads' objection, asserting that it was entitled to $76,697.66 for its work on both the dichargeability issue and the exemption issue, and stating: "[I]t has agreed to refrain from seeking administrative priority. Instead, Lind-Waldock is entitled to recover its legal fees and expenses as a subordinate unsecured claim for post-petition work." (Item No. 5, p. 4.)

Waldock's claim to $76,697.66 is based on several clauses in the contract between Waldock and the Moreheads that specified that

---

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

**In re: Morehead v. Waldock Investment Co.**                              1:05CV141

## MEMORANDUM OPINION AND ORDER

the parties would be required to pay attorneys fees and expenses related to the collection of any debit balance. Waldock's reply brief, however, is the first time that the mention of a subordinate claim based upon contractual language is documented in a written pleading to the Bankruptcy Court.

On August 22, 2005, the Bankruptcy Court entered an order awarding administrative expenses to Waldock's attorneys. However, it found that they were not entitled to reimbursement for any fees or expenses incurred with respect to the dischargeability issue. On the other hand, the Bankruptcy Court did find that Waldock's attorneys had provided substantial assistance in discovering the Moreheads' insurance assets, and in determining that those assets were not fully exemptible. It, further, concluded that Waldock's assistance had resulted in a substantial benefit to the estate.

Accordingly, after examining every financial entry submitted by Waldock, the Bankruptcy Court identified those entries related to work performed by Waldock's attorneys in both discovering the Moreheads' disability policy and also subsequently litigating the Moreheads' exemption of that policy. It then awarded attorneys' fees and expenses based on those findings. In sum, the Bankruptcy Court awarded the law firm of Nathan & Roberts $9,427.58 in fees, and the law firm of Steptoe & Johnson $5,249.00 in fees and $916.95

in expenses related to the services those firms provided on behalf of Waldock.

On August 29, 2005, Waldock filed a notice of appeal in this Court arguing that the Bankruptcy Court had erred in awarding Waldock only $15,593.53 in administrative expenses for work done by its attorneys, when, pursuant to 11 U.S.C. § 510, Waldock had agreed to relinquish its administrative priority in exchange for a unsecured subordinate claim for post-petition work in the amount of $76,697.66. On September 6, 2005, the Moreheads also filed a notice of appeal in this Court, arguing that the Bankruptcy Court had erred in the amount of attorney fees it had awarded to the law firms of Nathan & Roberts and Steptoe & Johnson. They based their argument on the bar of <u>res judicata</u> and, alternatively, on the fact that the value of the firms' work involved in its discovery and disclosure of the disability insurance policy was <u>de minimus</u>.

### IV. <u>STANDARD OF REVIEW</u>

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). While the Bankruptcy Court's application of law is reviewed <u>de novo</u>, its findings of fact may not be set aside unless clearly erroneous. <u>Foley v. Lardner v. Biondo (In re Biondo)</u>, 180 F.3d 126, 130 (4th Cir. 1999).

In re: Morehead v. Waldock Investment Co.                    1:05CV141

MEMORANDUM OPINION AND ORDER

V. **WALDOCK'S APPEAL**

While acknowledging that it was entitled to an award of fees and expenses, Waldock contends that the Bankruptcy Court erred by awarding it administrative expenses pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4), when it had sought relief through an unsecured subordinate claim based on contractual terms. In support, Waldock contends that: (1) It had agreed to forego its claim for administrative expenses and pursue an unsecured subordinate claim for post-petition work in the amount of $76,697.66; (2) the agreement to pursue a subordinate claim was (a) discussed at a hearing before the Bankruptcy Court on December 2, 2004, (b) memorialized in an agreed order signed by Waldock's counsel and the bankruptcy Trustee in April 2005, and (c) discussed in Waldock's Reply in Support of its Motion for Allowance of Administrative Expenses; and (3) its unsecured claim was based on two provisions in the contract between the Moreheads and Waldock[6] concerning the payment of legal fees and expenses associated with recovering debit balances. Thus, Waldock argues that the issue before the Bankruptcy Court was whether the provision for

---

[6] Paragraph eleven of the "Customer Agreement" section states, "Customer agrees to pay all expenses, including attorney's fees, incurred by Broker: (b) to collect any debit balances in Customer's account(s)." A similar clause is contained in the "Manager's Agreement" section of the contract.

attorneys' fees in the Moreheads' contract with Waldock was enforceable, and that the Bankruptcy Court erred as a matter of law by failing to acknowledge Waldock's unsecured subordinate claim when granting its award.

At its root, the question raised by Waldock's appeal is one of procedure, that is, did the Bankruptcy Court err procedurally when awarding Waldock administrative expenses pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). The Court considers this a question of law, and thus, subject to <u>de novo</u> review. <u>Foley</u>, 180 F.3d at 130.

The Local Bankruptcy Rules of the Northern District of West Virginia provide that "[m]otion and application practice in the main bankruptcy case are governed principally by Rules 5 and 7 of the Federal Rules of Civil Procedure and, among others, Rule 9013 of the Bankruptcy Rules." N.D.W.V. LBR 9013-1. Pursuant to F.R.C.P. 7(b), "[a]n application to the court for an order shall be by motion, which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds thereof, and shall set forth the relief or order sought." Further, ". . . proofs of claim, . . . complaints, [and] motions . . . shall be filed with the clerk in the district where the case under the Code is pending." Bankr. R. 5005. The Court, therefore, must examine the applicable procedural requirements for motions practice

and the facts of this case to determine if the Bankruptcy Court erred by ruling on Waldock's claim for administrative expenses as opposed to Waldock's purported unsecured subordinate claim.

Despite Waldock's claims, the appellate record contains scant indication that Waldock had made the Bankruptcy Court aware of its intent to relinquish its claim for administrative fees and seek an unsecured subordinate claim. It certainly contains no indication that Waldock actually moved the Bankruptcy Court for such alternative relief. The only evidence at all of any such intent is found in (1) the November 2, 2004, Bankruptcy Court hearing transcript (Supp. Item No. 1.), and (2) Waldock's reply brief (Item No. 5.).

In accordance with F.R.C.P. 7(b) and N.D.W.V. LBR 9013-1, a motion must be in writing, unless it is made during the course of a hearing. After thoroughly reviewing the November 2, 2004 hearing transcript, the Court finds no evidence that Waldock ever moved the Bankruptcy Court either to withdraw its claim for administrative expenses or to affirmatively bring an unsecured subordinate claim. At the hearing, Waldock's representative stated that "what we're really prepared to accept is an unsecured claim that would be treated as a late filing claim . . ." (Supp. Item No. 1.) There is simply no language in the transcript to indicate that Waldock,

In re: Morehead v. Waldock Investment Co.                1:05CV141

MEMORANDUM OPINION AND ORDER

or any other party, moved the Bankruptcy Court for any action at that time.

Further, in its June 2, 2005 reply brief, Waldock stated that "it has agreed to refrain from seeking administrative priority. Instead, Lind-Waldock is entitled to recover its legal fees and expenses as a subordinate unsecured claim for post-petition work." (Item No. 5, p. 4.) Waldock's reply was a responsive pleading and in no way has the effect of bringing a motion before the Bankruptcy Court. The record is also devoid of any evidence that Waldock ever filed an unsecured subordinate claim with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 5005.

Furthermore, the only evidence that any agreement existed between Waldock and the Trustee is an alleged agreed order signed sometime in April 2005. However, there is no evidence that this order was ever presented to or filed in the Bankruptcy Court. It is not part of the official Bankruptcy Court record, and was only produced as part of the appellate record. Therefore, it is not properly before this Court on appellate review.

In its August 22, 2005 order granting administrative expenses, the Bankruptcy Court ruled on the only motion before it, Waldock's motion for administrative expenses pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). Thus, the Court finds, pursuant to

**In re: Morehead v. Waldock Investment Co.**                    1:05CV141

MEMORANDUM OPINION AND ORDER
_____

Rule 5005 of the Federal Rules of Bankruptcy Procedure and Rule 7(b) of the Federal Rules of Civil Procedure, that the Bankruptcy Court's award of administrative expenses was procedurally proper as a matter of law.

### VI.  THE MOREHEADS' APPEAL

#### A.  Res Judicata Bar.

The Moreheads argue that the Bankruptcy Court erred in its calculation of fees and expenses, and assert that Waldock is not entitled to any award or, in the alternative, only a de minimus award, for the work of its attorneys. They contend that principles of res judicata bar Waldock's recovery for attorneys fees and expenses, and that any work done by Waldock to the benefit of the estate was de minimus and would be adequately compensated by an award of $300.00.

In arguing that principles of res judicata bar Waldocks's claim for administrative expenses, the Moreheads assert that Waldock filed its original proof of claim on March 3, 1998, and that a later objection to the proof of claim was resolved on October 9, 1998, when Waldock agreed to a claim in the amount of $321,038.56. As such, they claim that Waldock had the opportunity to assert the debt due and owing as part of its proof of claim at any time up to and including October 9, 1998. The Moreheads argue

15

that, inasmuch as the request for attorneys fees was a claim that could have been asserted in connection with the proof of claim filed previously in Bankruptcy Court, Waldock was barred by <u>res judicata</u> from asserting the claim subsequently.

"It is settled that <u>res judicata</u> is an affirmative defense that must be affirmatively raised . . . Failure to raise the defense results in waiver." <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975); See <u>Crowe v. Cherokee Wonderland, Inc.</u>, 379 F.2d 51, 54 (4th Cir. 1967). There is no indication in the pleadings filed before the Bankruptcy Court or anywhere in the official appellate record that the Moreheads previously raised the defense of <u>res judicata</u>. Consequently, they have waived the defense and may not assert it for the first time on appeal. <u>Crowe</u>, 379 F.2d at 54. Thus, the Court declines to address the Moreheads' <u>res judicata</u> argument in connection with this appeal.

### B. <u>De Minimus Value of Work</u>.

The Moreheads also allege that any work done by Waldock benefitting the estate was <u>de minimus</u>, and that any award of administrative expenses should be calculated accordingly. The Moreheads argue that Waldock should only be compensated for the actual discovery of the disability policy and the subsequent communication of the policy's existence to the Trustee. They

**In re: Morehead v. Waldock Investment Co.**            1:05CV141

<u>**MEMORANDUM OPINION AND ORDER**</u>

contend that Waldock's claim of $76,697.66, for attorneys fees and expenses is exorbitant in comparison to the Trustee's total compensation of $9,013.00 for attorneys' fees and expenses. Further, the Moreheads argue that Waldock was not employed by the Trustee and should not recover for work done on appeal because that work was done by the Trustee on his own behalf. Ultimately, the Moreheads believe that Waldock can be adequately compensated by a payment of a sum not in excess of $300.00 for what they believe should have amounted to a phone call or letter to the Chapter 7 Trustee.

The Bankruptcy Court's determination of the award amount was based upon findings of fact and must be reviewed for clear error. The official appellate record and the Order Granting Administrative Expenses (Item No. 3.) outline the Bankruptcy Court's thorough determination of what fees and expenses Waldock would be awarded.

> [T]he Court has read through each and every entry and if it could be surmised that the work was performed related to the exemption, credit was given. The expenses were even more difficult and ultimately the Court only reimbursed the attorneys for the depositions of the Moreheads. Anything more was purely guesswork. The Court has reimbursed the trustee who appealed the exemption issue and assumes the Court expenses were paid by the trustee, if any were imposed. The Court has allowed the fees and expenses shown on the invoices as

**In re: Morehead v. Waldock Investment Co.** 1:05CV141

MEMORANDUM OPINION AND ORDER

> appeals with regards to the exemption issue as they were
> of assistance to the trustee.

(Item No. 3, p. 3.)

The Bankruptcy Court's order then outlines a series of itemized invoices and details exactly how it determined the proper award amounts.

Before making that calculation, the Bankruptcy Court took into account the Trustee's acknowledgment that Mr. Epperly of Steptoe & Johnson had played a significant role in preparing the appeal on the exemption issue from the Bankruptcy Court to this Court. In addition, the Bankruptcy Court did not allow collection with respect to work Waldock performed on the dischargeability issues. It is clear that the Bankruptcy Court took extensive time to delve through a formidable amount of billing statements and documents and made an award based on a clear and concise analysis. Accordingly, there is no clear error in the Bankruptcy Court's findings of fact as to the calculation of administrative expenses awarded to Waldock.

## VII. CONCLUSION

Based on the discussion above, the Court **AFFIRMS** the decision of the United States Bankruptcy Court for the Northern District of West Virginia, as memorialized in its Order dated August 22, 2005, granting administrative expenses to Nathan & Roberts and Steptoe &

**In re: Morehead v. Waldock Investment Co.**					1:05CV141

<u>**MEMORANDUM OPINION AND ORDER**</u>

Johnson totaling $15,593.53, in conjunction with services performed for Waldock Investment Company.

The Court **DISMISSES** the appeals in Civil Action 1:05CV141 and 1:05CV140 from the docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: July _____//_____, 2006.

                                        _/s/ Irene M. Keeley_
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE